## IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISRICT OF OHIO
### WESTERN DIVISION

LAWRENCE BULLARD
c/o David A. Singleton
Ohio Justice & Policy Center
215 East 9th Street, Suite 601
Cincinnati, Ohio 45202

   Plaintiff,

  vs.

LINDA JANES
In her official capacity, Deputy Director
Parole and Community Services
Ohio Department of Rehabilitation and
Correction
770 West Broad Street
Columbus, Ohio 43222, and

LORI KRAMER
In her official capacity,
Supervising Parole Officer
Ohio Department of Rehabilitation and
Correction Adult Parole Authority
Cincinnati Regional Office
7710 Reading Road, Suite 210
Cincinnati, Ohio 45237, and

AMY GUENDELSBERGER
In her official capacity, Parole Officer
Ohio Department of Rehabilitation and
Correction Adult Parole Authority
Cincinnati Regional Office
7710 Reading Road, Suite 210
Cincinnati, Ohio 45237, and

JOHN/JANE DOE
In his/her official capacity,
Sex Offender Specialist
Ohio Department of Rehabilitation and
Correction Adult Parole Authority
Cincinnati Regional Office
7710 Reading Road, Suite 210
Cincinnati, Ohio 45237,

  Defendants.

Case No. **1:10CV157**

Judge **J. BARRETT**

Magistrate Judge

**COMPLAINT**



## PRELIMINARY STATEMENT

1. Defendants have forced Plaintiff Lawrence Bullard, a Jehovah's Witness on probation from the State of New York, to choose between his faith and his freedom. Defendants have unreasonable, arbitrarily and capriciously curtailed Mr. Bullard's freedom to go door-to-door to bear witness with other Jehovah's Witnesses, as his faith requires, by barring him from doing so except once per month. Defendants have warned Mr. Bullard that if does not agree to this limitation, they will request a warrant for his arrest from New York. Because of the importance of his faith to him, Mr. Bullard has refused to accept this restriction. Therefore, Mr. Bullard brings this action to enjoin Defendants from substantially and unconstitutionally burdening his right to practice his faith.

2. The Defendants justify their decision on the grounds that Mr. Bullard was convicted of a sex offense in 2002. But the circumstances of that conviction do not warrant Defendants' concern that he would pose a risk if allowed to bear witness door-to-door in the company of other Jehovah's witnesses more often than once per month. Mr. Bullard's victim was his fiancée. They had recently ended their on again off again relationship. Mr. Bullard gained entry to her home, waited for her in a closet and then confronted her when she arrived home. During their argument, Mr. Bullard, who was a virgin and had not before engaged in sexual relations because of his faith, touched her pubic area. Immediately realizing that what he had done was wrong, he called the police on himself and waited to be arrested. And he subsequently pled guilty to attempted sexual abuse and was placed on ten years probation.

3. In light of the circumstances of his offense – his first ever brush with the law – arbitrarily restricting Mr. Bullard from going door-to-door to bear witness makes no sense – especially when Mr. Bullard would always be accompanied by other Jehovah's Witnesses. It is

2

wrong for the Defendants to force Mr. Bullard to choose between his faith and his freedom, and they should be enjoined from doing so.

## JURISDICTION AND VENUE

4. This action is brought under 42 U.S.C. § 1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343. The Court has authority under 28 U.S.C. § 2201 to provide appropriate declaratory relief as to matters within its jurisdiction.

5. Additionally, this action includes related violations of the Constitution of the State of Ohio. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) and Civ. R. 82.1, because the Plaintiff and all Defendants reside in the Southern District of Ohio, Western Division.

## PARTIES

7. Mr. Bullard resides in Hamilton County, Ohio. He is currently on parole from Dutchess County New York and is being supervised by the Ohio Department of Rehabilitation and Correction Adult Parole Authority pursuant to the Interstate Compact. His parole term expires in 2012.

8. Defendant Linda Janes is the Deputy Director Parole and Community Services for the Ohio Department of Rehabilitation and Correction. As such, she is responsible for enforcing Adult Parole Authority the policies and procedures governing the supervision of individuals on parole. Defendant Janes is sued in her official capacity.

9. Defendant Kramer is a supervising probation officer for the Cincinnati Regional Office of the Adult Parole Authority. As such, she is responsible for supervising parole officers

3

in the Cincinnati Regional Office of the Adult Parole Authority.  Defendant Cramer is sued in her official capacity.

10. Defendant John Doe is a Sex Offender Specialist for the Cincinnati Regional Office of the Adult Parole Authority.  As such, he is responsible for making recommendations regarding parole conditions for registered sex offenders on parole. Defendant John Doe is sued in his official capacity.

11. Defendant Amy Guendelsberger, is a parole officer for the Cincinnati Regional Office of the Adult Parole Authority. As such, she is responsible for supervising individuals on parole which includes making determinations regarding sanctions to be imposed for parole violations. Defendant Gindelsberger is sued in her official capacity.

## FACTUAL ALLEGATIONS

12. Mr. Bullard is a 37-year-old man who lives in Cincinnati, Ohio.  He lives with his wife Katrina, whom he married four years ago. Both are devout Jehovah's Witnesses who go door-to-door usually twice per week to bear witness as required by their faith.

13. In 1993, Mr. Bullard, who was raised as a Jehovah's Witness, moved from Cincinnati to New York State to do missionary work for the ministry.

14. Shortly after arriving in New York, Mr. Bullard met Pam Hall, another member of the congregation. In 1999, after being friends for six years, Mr. Bullard's relationship with Ms. Hall turned romantic. This was the first serious relationship Mr. Bullard had ever had.  He had never had sexual intercourse with anyone, including Ms. Hall – even though he had asked her to marry her.

15. Unfortunately, their relationship was a rocky one.  Mr. Bullard and Ms. Hall argued frequently and broke up on numerous occasions.  On or about December 16, 2001, after another break up Lawrence went over to Ms. Hall's house. He was angry at her, upset and confused. He let himself in when she was not home and hid in her closet waiting for her to come home.

4

16. After Ms. Hall came home, Mr. Hall confronted her. And they argued. At some point, he forcibly kissed her and fell to the floor on top of her. He then put his hands down her pants touching her pubic area.

17. Mr. Bullard immediately realized that he made a serious mistake in violation of both his faith and the law. And he knew he had to fix it. He got up, went down to the lobby of Ms. Hall's apartment building, and called the police on himself. He waited there in the lobby until the police arrived and arrested him.

18. Mr. Bullard fully accepted responsibility for his crime and pled guilty to attempted sexual abuse, an E felony – the lowest level felony offense in New York. He was sentenced to ten years probation and ordered to register as a sex offender.

19. Additionally, New York officials determined Mr. Bullard to be at low risk to re-offend sexually.

20. After being placed on probation, Mr. Bullard applied to have his probation transferred to Cincinnati, Ohio, so that he could be with his family. His application was approved and supervision was transferred from New York to Ohio under the Interstate Compact.

21. On or about July 2008, because of his trouble-free adjustment to probation, Mr. Bullard was placed on non-reporting status.

22. Defendant's ultimatum to Mr. Bullard – curtail the exercise of your faith or go to prison – arose out of a dispute over his employment.

23. On or about September 2009, Mr. Bullard began working for Amazon.com in Kentucky. He called his probation officer and told her about the job and was told he needed to come in to get his travel permit. Mr. Bullard allegedly missed two meetings to get his travel permits and was sanctioned by being placed back on reporting status. Defendant Guendelsberger then called Amazon and informed the employer that Mr. Bullard had been convicted of a sex offense. Mr. Bullard then lost his job and began looking for other work.

5

24. Mr. Bullard was considering a number of different job opportunities including a job offer he got from Apex roofing company to go door to door selling roof repairs. When Apex offered him the job they gave him a number of business cards which he kept in his pocket.

25. On or about January 8, 2009, Mr. Bullard met with Defendant Guendelsberger. During the meeting, as Mr. Bullard was pulling things out of his pockets, Defendant Guendelsberger saw business cards from Apex roofing. When Defendant Guendelsberger asked Mr. Bullard about the cards, he told her about the job opportunity. Defendant Guendelsberger then informed Mr. Bullard that he was not allowed to go door-to-door.

26. Mr. Bullard then informed Defendant Guendelsberger that as a Jehovah's Witness he goes door-to-door twice per week with other Jehovah's Witnesses. He also explained that bearing witness in this manner is a fundamental tenet of his religious beliefs. Defendant then asked Mr. Bullard to sign a document agreeing that he would not go door-to-door for any purpose. Mr. Bullard refused and Defendants requested a warrant for his arrest from New York.

27. Counsel for Mr. Bullard then got involved. After a series of discussions with first Defendant Guendelsberger and then Defendant Kramer, Defendant Kramer agreed to withdraw the warrant request while the parties tried to resolve the issue amicably. Later, after discussions with other officials in her office, Defendant Kramer notified counsel that Defendants would not seek a warrant provided that Mr. Bullard agree not to go door-to-door except once per month.

28. Defendants are forcing Mr. Bullard to choose between his faith and his freedom. Going door-to-door to bear witness is a fundamental tenet of his religious belief. He is never alone when he goes door-to-door and is always accompanied by at least one member of his congregation. Additionally, his congregation is aware of his conviction for a sex offense yet supportive of his desire to practice his faith in the company of other Jehovah's Witnesses.

## CLAIM FOR RELIEF

29. The Defendants' attempt to restrict Mr. Bullard from going door to door as a Jehovah's Witness violates the Constitution and the laws of the United States in the following respects:

A. The restriction in question impermissibly and unduly burdens Mr. Bullard's right to free exercise his religion as protected by the First Amendment of the United States Constitution, which applies to the states through the Fourteenth Amendment. The restriction violates the First Amendment by infringing upon a fundamental tenet of Mr. Bullard's faith: going door-to-door to witness.

B. The restriction in question constitutes a prior restraint on Mr. Bullard's right of free speech in violation of the First Amendment of the United States Constitution, which applies to the states through the Fourteenth Amendment. The restriction does so by preventing Mr. Bullard from going door-to-door, as often as he is able as required by his faith, to disseminate information about his religion.

C. The restriction in question violates Mr. Bullard's right of free association as guaranteed to him by the First Amendment of the United States Constitution, which applies to the states through the Fourteenth Amendment. The restriction prevents Mr. Bullard from associating freely with individuals whom he is attempting to disseminate information about his religion.

D. The restriction in question is unduly arbitrary and capricious and therefore denies Mr. Bullard equal protection of the law in violation of the Fourteenth Amendment to the Constitution of the United States.

30. The Defendants, who have all acted under color of law, have deprived and will continue to deprive, unless restrained, Mr. Bullard of his constitutionally protected rights.

31. The damage and injury done to Mr. Bullard by reason of being deprived of the foregoing rights is continuing and irreparable, and there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lawrence Bullard prays for relief as follows:

A.  Issue a temporary restraining order and/or preliminary injunction to enjoin Defendants from prohibiting Mr. Bullard from going door-to-door as a Jehovah's Witness more than once per month, and enjoining Defendants from seeking a warrant for Mr. Bullard's arrest based on his refusal to agree to cease going door-to-door, and enjoining Defendants from refusing to supervise Mr. Bullard based on this disagreement.

B.  Adjudge and declare Defendants' restriction to be in violation of the First and Fourteenth Amendments to the Constitution of the United States and therefore unconstitutional and void; and

C.  Issue a permanent injunction prohibiting Defendants from restricting Lawrence Bullard from going door to door as a practicing Jehovah's Witness.

D.  An award of attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

E.  Such other and further relief as this Court finds just and equitable.

Respectfully submitted,

_____
David A. Singleton (#0074556)
Trial Attorney for Plaintiff
Kelly Gilliam*
Bill Noelker*
Molly Lyons*
Ohio Justice & Policy Center
215 East 9th Street, Suite 601
Cincinnati, OH 45202
Tel.: (513) 421-1108 ext. 17
Fax: (513) 562-3200
Email: dsingleton@ohiojpc.org
      stimanpeter@gmail.com
      wrnoelker@roadrunner.com
      lyonsm13@gmail.com

*Practicing as legal interns pursuant to Student Practice Rule (Local Rule 83.6) of the Southern District of Ohio.